The VON SOLBRIG HOSPITAL, INC.,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.
No. 71–1535.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1972.

Decided July 5, 1972.

Bernard M. Kaplan, Ruben, Kaplan & Lasky, Chicago, Ill., for petitioner.

Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William F. Wachter, Howard Kaufman, Attys., N.L.R.B., Washington, D. C., for respondent.

Before Mr. Justice CLARK *, CASTLE, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CLARK, Associate Justice.

The Von Solbrig Hospital, Inc., petitioner, seeks to set aside an order of the National Labor Relations Board issued against Hospital on March 24, 1971, finding that it had violated Section 8(a)(1) of the National Labor Relations Act [61 Stat. 136], as amended, by interrogating employees about their own and other employees' union activities and by threatening that employees would be discharged for attending union meetings or for having anything to do with a union; and the Board also found that the Hospital violated Section 8(a)(3) of the Act by discharging one employee because of union activity. The Board seeks enforcement of its orders.

The Hospital raises an array of contentions, beginning with whether (1) the Hospital Employees Labor Program [H.E.L.P.] was a labor organization within the meaning of § 8(a)(3) of the Act; (2) the Hospital is in commerce within the meaning of Section 2(6) and (7) of the Act; (3) the impact of the Hospital's operation on commerce is de minimis particularly in view of the Board's refusal to exercise jurisdiction in the past over proprietary hospitals; (4) Hospital had reasonable grounds for discharging Nurses' Aide Veronica Brongel, unrelated to union activities or was motivated to discriminate against her because of her union activities; (5) Hospital interfered with, restrained or coerced employees in the exercise of their rights under Section 7 of the Act, in violation of § 8(a)(3) of the Act; the impact on commerce of the alleged unfair labor practice was substantial. We find no merit in any of the contentions and, therefore, deny Hospital's petition for review and grant the Board's petition for enforcement. We shall treat these claims seriatim.

■■ 1. Hospital says that H.E.L.P. has not met the filing requirements of the Labor Management Reporting and Disclosure Act [29 U.S.C. § 401] and cannot, therefore, file a charge before the Board. However, the National Labor Relations Act § 2(5) only requires that the complaining employees participate in the charging association and that the latter exists for the purpose of dealing with employers. NLRB v. Cabot Carbon Co., 360 U.S. 203, 213, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959). There is no requirement that it must first meet the mandate of L.M.R.D.A. We, therefore, sustain the Board. As to the Board's jurisdiction, it is true that it declined jurisdiction over proprietary hospitals in a series of cases beginning with Flatbush General Hospital, 126 NLRB 144 (1960); however, as early as 1967, it decided that it would thereafter assert jurisdiction over proprietary hospitals with a gross annual income of $250,000 or more. Butte Medical Properties, d/b/a Medical Center Hospital, 168 NLRB 266. The Hospital here concedes that its annual gross volume of business is more than one million dollars. The courts have long held that when the business activities of an employer have a sufficient impact on commerce to bring it within the statutory jurisdiction of the Board, that the extent to which that jurisdiction will be exercised "is a matter of administrative policy within the Board's discretion . . . " NLRB v. WGOK, Inc., 384 F.2d 500, 502 (5 Cir. 1967); Herbert Harvey, Inc. v. NLRB, 137 U.S.App.D.C. 282, 424 F.2d 770, 783 (1969). Nor do we feel that the impact of Hospital's operations on commerce is de minimis. The Hospital concedes that during 1969 it purchased $1,925.78 of supplies from out of state sources. This is not a mere bagatelle. NLRB v. Aurora City Lines, 299 F.2d 229, 231 (7 Cir. 1962). In addition, it purchased $83,000 of supplies, some of which were necessarily in commerce. Nor are we con-

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

vinced that because Congress exempted non-profit hospitals from the Act that the Board is denied jurisdiction over the proprietary ones.

■ 2. Our detailed examination of the record shows that Hospital operates a three-story hospital structure with the first two floors devoted to patient care; with 20 registered nurses, two licensed practical nurses, and about 25–30 nurses' aides. These employees are under the immediate supervision of a Supervisor of Nurses who is responsible to Dr. C. R. Von Solbrig, President of Hospital.

It appears that Nurses' Aide Brongel, who had been employed by Hospital for ten years, called the Director of H.E.L.P. in April, 1970, to ask if H.E.L.P. would organize the employees at Hospital. H.E.L.P. invited the employees to attend a union organizational meeting on May 26th at a local bowling alley. Only two attended, Brongel and Registered Nurse Kirchner. At the meeting Brongel complained of the low wages that she was receiving. Kirchner relayed Brongel's complaint to the Director of Nurses, Miss Uptain, who, in turn, gave it to Dr. Von Solbrig. Shortly thereafter, Kirchner was interrogated by the doctor and she told him that she and Brongel attended. On June 3rd, H. E.L.P. placed handbills at the front and back of the hospital which recited that Hospital employees were receiving as much as $1 an hour less than union hospital workers. It invited employees to sign the attached application form and mail it to H.E.L.P. The material in the handbill was furnished by Brongel. When Dr. Von Solbrig learned of the union literature, he asked Registered Nurse Funchion, who worked on the night shift with Brongel, if she had allowed anyone in the hospital with the handbills. She replied "no", that the employees brought them in. He told her that he wanted the names of all the employees bringing them in. That afternoon the payroll clerk of Hospital telephoned Brongel and told her that her "services were no longer required at the hospital." Brongel called Funchion and asked her if she [Brongel] had done anything wrong the night before. Funchion replied in the negative and Brongel requested that Funchion ask Dr. Von Solbrig why she was discharged. Upon her inquiry, Dr. Von Solbrig said that "Vern [Brongel] had attended a union meeting and that he would fire anyone who had anything to do with the union." She told the doctor others were at the meeting and he asked who they were, but Funchion did not know.

■ Hospital contends that rather than firing Brongel for union activity, that she was "uncooperative" and was making false clini-tests. Dr. Von Solbrig outlined the unfavorable reports that he had received during the previous three to five months as to Brongel's work. Dr. Von Solbrig further denied making the statement attributed to him by Funchion, although he did admit having a conversation with Kirchner, R.N., in which she told him of the union meeting that she had attended. Neither she nor any other employee were fired. All sides of this testimony was aired out in detail before the Examiner and both he and the Board resolved it against Hospital and favorable to H.E.L.P. Under Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), such findings being supported by substantial evidence on the whole record must be accepted here. Having examined the whole record, we find such substantial support. Even though we might feel inclined to tip the scales the other way—which, in fact, we do not— we are not at liberty to do so. See *Id.* at 488, 71 S.Ct. at 465.[1] Ours is to de-

---

1. As Justice Frankfurter observed, "To be sure, the requirement for canvassing 'the whole record' in order to ascertain substantially does not furnish a calculus of value by which a reviewing court can assess the evidence. . . . Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*."

cide not whether a lawful motive on the part of Hospital could as easily have been found, but whether substantial evidence on the whole record exists in support of the Board's finding.

The petition for review is, therefore, denied and the Board's application for enforcement of its order is granted.

It is so ordered.