THE VON SOLBRIG MEMORIAL HOSPITAL et al., Plaintiffs-Appellants, v. DOMINIC LICATA et al., Defendants-Appellees.

(No. 58221;

First District (2nd Division)—November 20, 1973.

William T. Halvorsen, of Chicago, for appellants.

Lester Asher and Marvin Gittler, both of Chicago (Asher, Greenfield, Gubbins and Segall, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This is an appeal from the decisions of the circuit court of Cook County to quash summonses against a labor organization and to dismiss plaintiffs' complaint against the two named individual defendants. The complaint in the court below sought damages for alleged libels committed in the course of a labor dispute between plaintiffs and defendants. For purposes of clarity, hereinafter the plaintiffs will be referred to as follows: the von Solbrig Memorial Hospital as "the Hospital"; Dr. Charles R. von Solbrig as "von Solbrig"; and Sylvia Uptain as "Uptain." The individual defendants, Dominic Licata and Jeanne Smith, will be referred to as "Licata" and "Smith," respectively; and the remaining defendants will be referred to collectively as "the Union." Licata and Smith, at the time of the alleged libels, were, respectively, a director and a representative of the Union.

The labor dispute in question arose in April of 1970 when the Union was engaged in organizational activities at the Hospital. At that time, the Union, through a leaflet distributed to the Hospital's employees, invited the employees to attend an organizational meeting which was held in late May of that year. In addition, the leaflet, dated April 24, 1970, accused Uptain of "Bossism" at the Hospital, characterized Uptain as "Boss Sylvia" and a "Queen Bee" with respect to her duties as Director of Nurses at the Hospital, and, *inter alia*, appealed to the employees to join the Union in order to better their working situation at the Hospital. Defendant Licata's signature appeared at the close of the April 24 leaflet.

On June 3, 1970, one Veronica Brongel, a nurses' aide at the Hospital, who had been employed there for approximately ten years and who had attended the late-May Union meeting and had furnished Union handbills to the Hospital's employees, was informed by the Hospital's payroll clerk that her (Brongel's) services were no longer required at the Hospital. The Union thereafter brought the discharge to the attention of the

National Labor Relations Board,[1] and, moreover, undertook a leaflet campaign against the Hospital, von Solbrig, and Uptain with a view toward vindicating Brongel and having her restored to her position at the Hospital.

One leaflet, dated September 8, 1970, at the bottom of which appeared defendant Smith's name, stated, among other things, that the Hospital had "fired" Brongel; that the Union had taken this "unjust discharge" before the N.L.R.B.; that the Board had declared that the firing was unjust and that employees of the Hospital should join the Union and support Veronica Brongel's "fight."

Subsequent to the N.L.R.B. hearings into the Brongel matter, which were held on October 13, 14, and 15, 1970, the Union distributed yet another leaflet, dated October 21, 1970, which stated, in pertinent part, the following relative to the N.L.R.B. hearings: that von Solbrig had testified at the hearings that Brongel was "really a bad employee who had done her work poorly"; that von Solbrig had become "enraged and fired her" because of her union meeting attendance; that von Solbrig and another employee proceeded at the hearings "to attempt a cover up with a pack of lies about her [Brongel's] performance on the job. Apparently, even Sylvia Uptain [and another employee] couldn't be counted on to back up these lies with a straight face, because after waiting for two days to testify, they were sent home when their turns came." The leaflet's concluding three paragraphs included these statements:

> "However, when the subject [of the hearings] comes up, Von Solbrig completely loses his cool, turns purple, and starts his Prussian general tirade. * * *
>
> "Little does Von Solbrig know that the days of complete dictatorship are over. * * *
>
> "Dr. Von Solbrig has lost a battle! However, he still has to lose the war. You, [sic] can be the one to finally bring this Prussian dictator to his knees."

---

[1] The matter of Brongel's discharge was brought by the Union before the National Labor Relations Board, the Union alleging that the Hospital unlawfully discharged Brongel because she had engaged in union activities, and, by reason of the discharge and other conduct, the Hospital had engaged in unfair labor practices within the meaning of the National Labor Relations Act. On March 24, 1971, the N.L.R.B. concluded in its decision that the Hospital had engaged, and was engaged in, unfair labor practices and entered a cease and desist order. Subsequently, the Hospital filed a petition for review of the N.L.R.B. order. In May of 1972, the petition for review was denied and the application for enforcement of the order granted in *The von Solbrig Hospital, Inc. v. N.L.R.B.* (7th cir. 1972), 465 F.2d 173.

On March 25, 1971, plaintiffs filed a lengthy three-count complaint against defendants, incorporating as exhibits therein the April 24, September 8, and October 21, 1970 leaflets. Count one, with reference to plaintiff Hospital, alleged, *inter alia*, that the defendants, knowing that the Hospital was an institution of good name, accreditation, and so forth, maliciously caused to be written, and, in bad faith, published articles and letters containing libels concerning the Hospital; that defendants, in publishing said libels, lacked good faith and that their publication was conceived "solely because of a malicious design to injure" plaintiff Hospital; and that as a direct and proximate result of the libels, the Hospital had been injured in its reputation in the community and had suffered substantial economic loss incurred herein. Count one concluded with a prayer for judgment against defendants for compensatory damages of $100,000.00, for punitive damages of $1,000,000.00, and costs. Count one alluded to a spate of examples of the alleged libelous statements made in the Union leaflets, many of which are set forth above *in haec verba* or in paraphrase.

Count two of the complaint, with reference to plaintiff von Solbrig, alleged, *inter alia*, much of what had been alleged in count one; it then went on to allege that defendants, knowing von Solbrig to be a physician and surgeon of good name, accreditation, and so forth, and with intent to injure von Solbrig's good name and his professional reputation as a physician and administrator of the Hospital, caused to be published libels in the Union's leaflets referred to above. (Again, count two set forth many instances of alleged libelous statements taken directly from the leaflets.) Count two concluded with allegations that because of said alleged libelous statements, von Solbrig had suffered ill health, emotional distress and damage to his reputation and medical practice. The prayer for judgment in this count was identical to that in count one.

Count three of the complaint, with reference to plaintiff Uptain, once again alleged much of what had been alleged in count one, and again cited several examples of alleged libelous statements concerning Uptain which were extracted verbatim from the Union leaflets. In addition, count three charged that the statements impugned Uptain's reputation as director of nurses and caused her ill health and economic loss. The count concluded with a prayer for judgment in amounts identical to those set forth in the earlier counts.

On April 28, 1971, attorneys for the Union, acting on behalf of the Union only, entered a special and limited appearance before the court below for the purpose of objecting to the court's jurisdiction over the persons of the named Union defendants and moved the court to quash

the summonses issued on the grounds that the Union defendants were voluntary unincorporated associations, commonly called labor unions, and as such could not be sued in law by or in their association names.

On the same date, attorneys for defendants Licata and Smith moved the court below to strike plaintiffs' complaint and to dismiss the action on the grounds that the complaint was insufficient at law. In support of their motion, defendants gave these reasons, among others: even if true, the alleged libelous statements were undertaken solely in connection with a labor dispute, that the statements carried a "qualified privilege," and that the complaint alleged no special damages as required by law; the alleged defamatory material was not libelous per se, the complaint alleged no special damages or facts upon which to establish same, and, therefore, the complaint failed to state a cause of action; and the alleged libelous material was not defamatory as a matter of law.

The court below, by orders dated August 8, 1972, ordered the summonses as to the Union defendants quashed, the complaint stricken, and the cause dismissed on its pleadings.

Plaintiffs appeal from those orders of court.

Two issues are presented for resolution on appeal: (1) whether the court below erred in quashing the summonses with respect to the Union defendants; and (2) whether it was error to strike the complaint and dismss the cause on its pleadings.

■■ With respect to the first issue, the court below was eminently correct in quashing the summonses issued for the Union defendants. As we said at page 579 in *Murley v. Painters Local 147* (1st Dist. 1971), 133 Ill.App.2d 578, 273 N.E.2d 538: "The law in Illinois is well settled that a labor union operating as an unincorporated association cannot be sued in its own name for a money judgment." (See also *Boozer v. Local 457, UAW* (1st Dist. 1972), 4 Ill.App.3d 611, 279 N.E.2d 428; *Cahill v. Plumbers Local 93* (2nd Dist. 1925), 238 Ill.App. 123; and *Kingsley v. Amalgamated Meat Cutters* (4th Dist. 1944), 323 Ill.App. 353, 55 N.E. 2d 554.) Defendant Hospital Employees Labor Program of Metropolitan Chicago [H.E.L.P.] has been found to be a "labor organization" within the meaning of section 2(5) of the National Labor Relations Act (29 U.S.C.A., sec. 152) by virtue of the holding in *The von Solbrig Hospital, Inc. v. N.L.R.B.* (7th cir. 1972), 465 F.2d 173, 174. Therefore, the court below committed no error in quashing the summonses in the instant matter.

Regarding the resolution of the second issue on appeal—whether the court below erred in striking plaintiffs' complaint and dismissing the cause on its pleadings—we look for guidance to the U.S. Supreme

Court's decision in *Linn v. United Plant Guard Workers Local 114,* (1966), 383 U.S. 53, 15 L.Ed.2d 582, 86 S.Ct. 657. The seminal issue in *Linn,* as delineated by the Court, was whether, and to what extent, the National Labor Relations Act bars the maintenance of a civil action for libel instituted under state law by an official of an employer subject to the Act, seeking damages for defamatory statements published during a union organizing campaign by the union and its officers.

It was held in *Linn* that where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, courts do have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him.

By way of further characterizing the principles which should give guidance to both labor and management alike in disputes which might arise between them, the Court said at pages 62-63 of the *Linn* opinion:

"We acknowledge that the enactment of [Section 8 (c) of the National Labor Relations Act] manifests a congressional intent to encourage free debate on issues dividing labor and management. And, as we stated in another context, cases involving speech are to be considered 'against the background of a profound. * * * commitment to the principle that debate * * * should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasant sharp attacks.' *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964). Such considerations likewise weigh heavily here; the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth. But it must be emphasized that malicious libel enjoys no constitutional protection in any context. After all, the labor movement has grown up and must assume ordinary responsibilities. The malicious utterance of defamatory statements in any form cannot be condoned, and unions should adopt procedures calculated to prevent such abuses."

In limiting the availability of state remedies for libel to those instances in which the complainant can show that the defamatory statements were circulated with malice and caused him damage, the *Linn* Court held, at page 65, "* * * that a complainant may not recover except upon proof of such harm, which may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law."

Directing ourselves now to the case at bar, plaintiffs, in their brief submitted to this court, assert that "The words in the letters (the Union

leaflets) charge plaintiffs with doing something disreputable and connote opprobrious abuse and are therefore defamatory and no proof of special damage is required." In support of this statement, plaintiffs cite *Delis v. Sepsis* (1st Dist. 1972), 9 Ill.App.3d 217, 292 N.E.2d 138 and *Stanley v. Taylor* (4th Dist. 1972), 4 Ill.App.3d 98, 278 N.E.2d 824. Plaintiffs' statement is unsupported by the holdings in the *Delis* and *Stanley* cases as applied to the instant matter, and it is clear from the complaint plaintiffs filed below, and from the statement in their brief quoted above, that plaintiffs are urging that the alleged libelous statements contained in the Union's leaflets are libelous per se, statements which are actionable regardless of whether a complainant alleges and proves special damages.

■■ Whether a writing is libelous in Illinois is a question of law to be determined by the court (*Gogerty v. Covins* (3rd Dist. 1955), 5 Ill.App. 2d 74, 124 N.E.2d 602; *Proesel v. Myers Publishing Co.* (1st Dist. 1964), 48 Ill.App.2d 402, 199 N.E.2d 73; *John v. Tribune Co.* (1962), 24 Ill.2d 437, 181 N.E.2d 105) and, in making that determination, courts apply the innocent construction rule set forth by our supreme court at page 442 in *John v. Tribune Co.*, cited above:

> "That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law."

It has also been clearly established in Illinois that in a libel action based upon published language which is not libelous per se, special damages must be alleged with particularity, and general allegations as to damages are insufficient. *Life Printing and Publishing Co. v. Field* (1st Dist. 1944), 324 Ill.App. 254, 58 N.E.2d 307; *Hambric v. Field Enterprises, Inc.* (1st Dist. 1964), 46 Ill.App.2d 355, 196 N.E.2d 489; and *Gogerty v. Covins, supra.*

■■ We find upon a reading of the complaint filed in the court below that the alleged libelous statements made by defendants may be characterized as extreme, bitter, and may hold up plaintiffs to execration, yet are not libelous per se under the stated law of Illinois. Further, based upon the rationale set forth in *Linn v. United Plant Guard Workers Local 114* and upon the concrete principles enumerated in *Life Printing, Hambric,* and *Gogerty,* among many others, we find that because plaintiffs failed to allege special damages with respect to the purported libelous statements of which they accused defendants, the court below properly sustained the motion to strike plaintiffs' complaint and dismiss the cause on its pleadings.

For these reasons, therefore, the decisions of the circuit court of Cook County are affirmed.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.