John Traff, Appellant, v. Andrew Fabro, Trading as Mid-West Terrazzo Mosaic Company, Appellee.

Gen. No. 44,525.

84

Opinion filed February 9, 1949.   Rehearing opinion filed March 16, 1949.   Released for publication April 11, 1949.

A. S. and E. W. Froehlich, of Chicago, for appellant.

G. A. Buresh, of Chicago, for appellee.

Mr. Justice Lewe delivered the opinion of the court.

Plaintiff, a general contractor, brought an action against defendant, a subcontractor, to recover damages resulting from defendant's refusal to furnish certain labor and material on a public school building in accordance with the terms of an alleged written contract. There was a jury trial and verdict and judgment in favor of defendant. Plaintiff appeals from orders overruling his motions for judgment *non obstante veredicto* and for a new trial.

The facts out of which the controversy arises are substantially as follows. April 30, 1946, plaintiff was awarded a general contract for the construction of a public school building at La Grange, Illinois. Prior to this award plaintiff solicited bids from various subcontractors covering their respective parts of the construction. On April 19, 1946, defendant addressed a proposal to plaintiff, which reads as follows:

"MID-WEST TERRAZZO MOSAIC CO.
CONTRACTORS
4332 W. Melrose Street
Chicago 41, Illinois

April 19, 1946

John Traff Construction Co.
3735 N. Clark St.
Chicago 13, Ill.

   Re: Addition to the 7th Avenue School
       7th Avenue and 49th St.
       La Grange, Ill.

Gentlemen:

We propose to furnish labor and the necessary material and equipment for the installation and completion of all the terrazzo work in the above building, as per plans and specifications prepared by Jos. C. Llewellyn, Architect, for the sum of $8,190.00.

Very truly yours,
Mid-West Terrazzo Mosaic Co.
(Signed) A. Fabro"

On June 5, 1946, plaintiff sent an acceptance of defendant's proposal, which reads as follows:

"Mid-West Terrazzo Mosaic Co.
4332 W. Melrose St.
Chicago 41, Ill.

   Re: Addition to the 7th Avenue School
       7th Avenue and 49th St.
       La Grange, Ill.

Gentlemen:

I accept your proposition of April 19th, 1946 to furnish the labor and necessary material and equipment for the installation and completion of all the terrazzo work in the above building, as per plans and specifications prepared by Jos. C. Llewellyn, Architect, for the sum of $8,190.00.

Very truly yours,
John Traff
By................"

Thereafter John H. Traff, plaintiff's son, repeatedly called defendant's place of business on the telephone, requesting that he call plaintiff for the purpose of getting defendant's work organized. In response to a registered letter sent by plaintiff on January 7, 1947, defendant visited plaintiff's office and borrowed the plans and specifications for the school building and again examined them.

April 15, 1947, defendant addressed a letter to plaintiff the pertinent parts of which read: "On April 19, 1946 we mailed you a proposal on the terrazzo work of $8,190 hoping that a contract will be forwarded to us in a reasonable time if we happen to be low bidder . . . . Up to this day one year later you have not mentioned in any of your letters or telephone calls for a signed contract. Our interpretation from experience in past years found that if we have no contract we have no job." On the following day, April 16, plaintiff wrote defendant: "You were employed by us to do this work and your present contention that no contract exists is without merit . . . . In view of your attitude we will re-let the work to another contractor." Afterwards plaintiff took bids from other contractors. Roman & Company made the lowest bid of $9,500. The terrazzo work was done by this company and paid in full by plaintiff. Plaintiff's claim is based on the difference paid Roman & Company and the price fixed in defendant's bid amounting to $1,310.

Defendant contends that a universal usage or custom existed in the terrazzo trade which required the execution of a formal contract between the general contractor and subcontractor covering details not provided for in the plans and specifications.

Defendant testified in substance that "There was a general and universal custom" in Cook county for twenty years among terrazzo contractors and general contractors, requiring general contractors to "auto-

matically make up the contract" which is submitted to the subcontractor covering details not provided for in the proposal and acceptance, such as the terms of payment, insurance, kind of materials, glass breakage, general cleaning, use of hoisting apparatus, water, light, heat and other items.

Arnold J. Rennen, called in behalf of defendant, testified that he is "a contractor in terrazzo mosaic" and an officer of a national association of terrazzo contractors; that the association provides a standard form for its members, of which defendant is one, for their use in making up contracts with general contractors; that "I know to a certain extent what other contractors do . . . the rules which we try to promote and to get terrazzo dealers into the habit of putting in their estimates a number of printed conditions under which the estimate is made," and that "the custom is that the terrazzo man furnishes the form upon which the contract is made."

Plaintiff testified that he has been engaged in the general contracting business for nearly thirty-five years and has made subcontracts for terrazzo work during that period, "probably one or two a year"; that "I have never in my whole experience heard of any custom that a contract must be supplemented by a formal written contract for terrazzo work. It has not occurred in my whole experience. I never knew of such a custom."

Carl Peterson, called in behalf of the plaintiff, testified that he has been a general contractor in Chicago for the past twenty-five years; that he has never "let any terrazzo contracts"; that he was not familiar with the practice of other contractors with respect to subcontracts.

■ A usage or custom to be binding must be so uniform, long-established, and generally acquiesced in, and so well-known, as to induce the belief that the par-

ties contracted with reference to it, nothing appearing in their contract to the contrary. (*Kelly v. Carroll,* 223 Ill. App. 309.)

■■ Proof of certain isolated instances is not sufficient to establish a usage or custom. (*Cleveland, C., C. & St. L. Ry. Co. v. Jenkins,* 174 Ill. 398.) In *Bissell v. Ryan,* 23 Ill. 566, the court said: "It will generally be desirable when a particular usage is relied on, to establish it by the testimony of several witnesses; and if it be a well-established usage, as it ought to be, this will not be difficult." The rule announced in the *Bissell* case with respect to proof of a custom or usage has been consistently adhered to by the courts of our State. See *Adam Groth & Co. v. Goss & Guise,* 232 Ill. App. 450; *F. B. Miller Agency, Inc. v. Home Ins. Co.,* 276 Ill. App. 418.

■ In support of his position defendant relies on *El Reno Wholesale Grocery Co. v. Stocking,* 293 Ill. 494, involving the sale of canned corn. There, unlike the instant case, it was undisputed that a general custom and usage was in force for many years in the wholesale canning and grocery trade. At page 500 the court said: "The general rule is that a custom or usage which is repugnant to the terms of an express contract is not permitted to operate against it and evidence of such custom or usage is inadmissible, for, while usage may be admissible to explain what is doubtful it is never admissible to contradict what is plain." In the instant case the testimony of the witness Rennen merely tends to show that the association of terrazzo contractors attempted to establish a custom by its rules. Defendant's proof does not show that plaintiff had knowledge of the existence of the alleged usage or custom, nor does it appear that he had any prior transactions from which it might be inferred that he had such knowledge. We therefore hold, under the authorities last cited, that the evidence fails to establish the usage or custom upon which defendant relies.

■ Defendant insists that his written proposal made to John Traff Construction Company and the acceptance thereof by plaintiff John Traff did not create a valid contract, on the ground that the acceptance of defendant's proposal was made by a party to whom it was not addressed. The record shows that this defense was not raised in the original answer but was interposed after plaintiff amended his complaint by alleging that on April 19, 1946, and thereafter no corporation existed in the State of Illinois by the name of John Traff Construction Company and no person by the name of John Traff other than plaintiff was engaged in the building or construction business.

The evidence shows that defendant got his information that John Traff Construction Company was bidding on the construction of a school building at La Grange, Illinois, from trade journals known as the Dodge Reports or The Construction News, which contain lists of new construction and the names of the general contractors who have made bids for such new construction; that defendant had never had any transaction with John Traff or the John Traff Construction Company; and that before making the proposal to plaintiff on April 19, 1946, defendant examined the plans and specifications for the construction of the school ''in the Dodge Reports office.'' To support his position defendant cites *Barker v. Keown,* 67 Ill. App. 433, and *Langdon v. Hughes,* 113 Ill. App. 203, which advert to *Arkansas Valley Smelting Co. v. Belden Min. Co.,* 127 U. S. 379. In the *Arkansas Valley Smelting Co.,* case, the court said (p. 387): ''Everyone has a right to select and determine with whom he will contract and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denham, 'You have a right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' '' There is nothing here to support defendant's contention in the case at bar since

defendant's own testimony clearly shows that he did not intend to deal with any person or firm known to him. In Williston on Contracts, 1937, vol. 5, p. 4363, sec. 1558, the author says: "The fact that one of the parties did not know the name of the person with whom he was dealing, or thinks that a person who is otherwise clearly identified as the one with whom it is intended to contract is someone else, will not prevent the formation of a contract." In Anson on Contracts, Turck edition, 1929, sec. 212, the author states: "Mistake as to the person with whom the contract is made makes the contract void. Mistake of this kind arises where A contracts with X believing that he is contracting with M. It can only arise where A has in contemplation a definite person with whom he desires to contract." See *Nutmeg State Machinery Corp. v. Shuford,* 129 Conn. 659.

Defendant here did not have in contemplation a definite person when he made his bid to a general contractor listed in a trade journal and whose name was unknown to him. Obviously defendant's purpose was to submit a bid to a contractor who might be awarded a general contract on the school building. Under these circumstances the character, credit or substance of the person with whom defendant contracted could not have been an inducement to defendant to make his proposal to plaintiff. Moreover, during the negotiations between the parties after plaintiff accepted defendant's proposal no objection was ever raised by defendant as to the identity of plaintiff. We think defendant's position is without merit.

■ ■ Defendant, as we understand it, makes no contention that the alleged contract lacks any essential element or that it is ambiguous, but claims it makes no provision for details customary in the terrazzo trade. The rule is well established that where unambiguous language which has a settled legal meaning is used in a contract or bid, evidence whether of custom or other-

wise is inadmissible to vary or contradict the words employed. (*Ambarann Corp. v. Old Ben Coal Corp.,* 395 Ill. 154; *Westinghouse Electric Elevator Co. v. La Salle Monroe Bldg. Corp.,* 395 Ill. 429.) Intention is to be determined from the language used in the instrument and not from any surmises that the parties intended certain conditions which they failed to express. (*Domeyer v. O'Connell,* 364 Ill. 467.)

It is not controverted that defendant's proposal was used by plaintiff in formulating his bid to the school authorities. The plans and specifications which appear in the record are such as are commonly used in school construction work and were adequate to enable Roman & Company to complete the work without a formal contract covering all the details which defendant says were lacking.

Since there were no issues of fact for the jury to determine, plaintiff's motion for a judgment notwithstanding the verdict should have been allowed.

For the reasons given, the judgment is reversed, and the cause is remanded with directions to enter a judgment in favor of the plaintiff.

*Judgment reversed and cause remanded with directions.*

BURKE, P. J., and KILEY, J., concur.

### ON REHEARING

In this case a rehearing was granted on the petition of defendant. Having considered the petition and the answer thereto we have decided to adhere to our opinion.