ROBERT W. COLGAN *et al.*, Plaintiffs-Appellants, *v.* RAE-ANN ELECTRIC CO., Defendant-Appellee.—ROBERT W. COLGAN *et al.*, Plaintiffs-Appellants, *v.* G & S ELECTRIC COMPANY, Defendant-Appellee.—ROBERT W. COLGAN *et al.*, Plaintiffs-Appellants, *v.* KENNETH L. STALZER, d/b/a Peyla Electrical Company, Defendant-Appellee.

Third District    Nos. 80-109, 80-110, 80-111 cons.

Opinion filed December 31, 1980.—Rehearing denied January 27, 1981.

George F. Mahoney, III, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellants.

Bruce Falk, of Codo, Bonds & Zumstein, P. C., of Joliet, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

These three cases, Colgan v. Peyla Electrical Company, Colgan v. G & S Electric, and Colgan v. Rae-Ann Electric, were consolidated for hearing below by the circuit court of Will County. In each case, the circuit court ruled against the plaintiffs, who alleged they were third-party beneficiaries under a collectively bargained labor contract. We conclude, as did the court below, that the issues and facts in each case are sufficiently similar as to permit the three cases to be determined in a

consolidated fashion. This decision will consider the facts and issues in each of the three cases and will set forth the relevant law in each instance.

The National Electrical Contractors Association (hereinafter NECA) bargains on behalf of the employers of workers in the electrical trades to reach an agreement with the union representing such workers, the International Brotherhood of Electrical Workers (hereinafter IBEW). The agreement reached between NECA and IBEW becomes a nationwide model for all labor contracts between electrical workers and their employers. The model contract has historically been adopted in the Joliet, Illinois, region by way of an inside agreement between the Joliet chapter of NECA and Local 176 of IBEW. When the inside agreement containing the regional version of the labor contract is complete, the practice in the Joliet region has been to solicit an assent to the contract from each employer who hires union workers. These three disputes concern the enforcement of the terms of the inside agreement in the absence of an employer's assent.

On June 1, 1977, the Joliet chapter of NECA and Local 176 of IBEW reached an inside agreement, which along with other provisions and consistent with the nationwide model agreement, required the employers to make contributions to a National Electrical Industry Fund (hereinafter NEIF). The NEIF was established as a trust fund to fulfill numerous purposes, including the payment of costs relating to public relations for the industry, industry development, and employer's collective bargaining. The inside agreement containing the NEIF provision was sent to Kenneth L. Stalzer, an agent for Peyla Electrical Company, with a request for Peyla's assent to the terms of the labor contract. No express, written assent was ever given in response to the solicitation made, although Peyla continued to employ tradesmen from Local 176. Consistent with Peyla's refusal to assent to the contract terms was its failure to make contributions to the NEIF as required by the contract.

The first of these three actions is brought against Peyla by the trustees of the NEIF who allege that in their fiduciary capacities they are third-party beneficiaries of the June 1, 1977, inside agreement, and that as a party to the agreement Peyla must make contributions to the NEIF. As recounted at the outset, the circuit court, after reviewing the documents and listening to the evidence, determined that Peyla was not a party to the June 1, 1977, agreement and thus had no contractual duty to the plaintiff-trustees as third-party beneficiaries. The trustees believe that decision was in error and have appealed.

■■ The first alleged error brought to our attention by the plaintiffs involves a finding by the trial judge. He determined that it was a custom of the Joliet chapter and Local 176 to evidence in writing each employer's assent to a new inside agreement. Specifically, the judge below found that

the custom in the Joliet region was to solicit a new assent from electrical contractors whenever a new agreement was reached. The trustees object to such a finding and rely on *Traff v. Fabro* (1949), 337 Ill. App. 83, 84 N.E.2d 874, *Wilke Metal Products, Inc. v. David Architectural Metals, Inc.* (1968), 92 Ill. App. 2d 265, 236 N.E.2d 303, *Marler v. Moultrie-Shelby Farm Service* (1973), 11 Ill. App. 3d 204, 295 N.E.2d 744, and *Denniston v. Skelly Oil Co.* (1977), 47 Ill. App. 3d 1054, 362 N.E.2d 712. Essentially, each of these cases recites the judicial preference for multiple sources of evidence in proving matters of custom and usage. We have no quarrel with the preference set forth in the cited cases, but we do quarrel with the trustees' contention that only the testimony of Peyla's agent Stalzer supports the conclusion reached by the trial court. Our review of the record reveals that the custom and usage, as determined by the court below, was verified not only by the oral testimony of Stalzer but also by the documentary evidence of Peyla's 1971 letter of assent, its 1973 letter of assent, and its 1975 letter of assent. Further, the testimony of plaintiff's own witness, Harvey Shriver, tends to support the same finding. We believe these multiple sources of evidence, in addition to similar documentary evidence before the court in the companion cases, provides a more than adequate foundation for the conclusion reached by the circuit court regarding custom and usage in the Joliet region.

It is next argued by the plaintiffs that even if the defendant did not expressly assent to the 1977 agreement requiring NEIF contributions, nevertheless defendant is still bound to the terms of the 1977 agreement by reason of the continuing authority of the assent executed by defendant in 1975. That assent provides as follows:

"In signing this letter of assent, the undersigned firm does hereby authorize Joliet Chapter, National Electrical Contr. Assoc., Inc. as its collective bargaining representative for all matters contained in or pertaining to the current approved Inside labor agreement between the Joliet Chapter, National Electrical Contr. Assoc. Inc. and Local Union 176, I.B.E.W. This authorization, in compliance with the current approved labor agreement, shall become effective on the 1st day of June, 1975. It shall remain in effect until terminated by the undersigned employer giving notice to the Joliet Chapter, National Electrical Contr. Assoc. Inc. and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned approved labor agreement."

The plaintiff-trustees urge us to interpret the quoted language as creating a continuing agency between the Joliet chapter and the defendant whereby the latter, as principal, would be bound by contracts negotiated by the former until the agency was terminated with the requisite 150-day

notice. Our construction of the provision is the same as applied by the court below.

We have read the cases cited by the plaintiffs in support of their construction of the letter of assent executed in 1975: Local Union No. 269 of the International Brotherhood of Electrical Workers v. John G. Fineran, Electrical Contractor, Inc. (1976), No. C-2630-75, Superior Court of New Jersey; Curtis L. Williams v. ITT Grinnel Industrial Piping, Inc. (1980), No. 780562-B, U.S.D.C.E.D., Virginia; Nelson Electric, *et al.*, and International Brotherhood of Electrical Workers, Local Union 669, (1979), No. 8CA-11183, 241 NLRB 83; Arco Electric Company and International Brotherhood of Electrical Workers, Local Union No. 611, AFL-CIO (1978), No. 28CA-4601, 237 NLRB 708. While well-reasoned decisions of other forums are persuasive here, they are not binding. (*Johnson v. Country Life Insurance Co.* (1973), 12 Ill. App. 3d 158, 300 N.E.2d 11.) Similarly, unpublished opinions are not controlling. (*People v. Oetgen* (1978), 62 Ill. App. 3d 29, 378 N.E.2d 1355.) It is not, however, that we disagree with the result in the cited cases which explains our construction of the assent in question. Rather, we believe there exists a fundamental and critical factual distinction between the instant facts and the facts of the previously cited cases.

Engrafted on every written contract are the customs, practices and definitions which are commonly understood and accepted by the parties. (*Bauer Distributing Co. v. Vesci Falstaff Beer Distributors, Inc.* (1966), 76 Ill. App. 2d 99, 221 N.E.2d 527.) Present in the facts of the instant case is the practice in the Joliet region of regularly, systematically, and invariably soliciting a new assent from each employer whenever a new agreement was reached. Evidence of such a practice is absent from the factual background of *Fineran, Williams, Nelson* and *Arco*. We believe the judge in each of those cases would have been differently persuaded if the custom and practice of the parties had been as determined by the court below.

■■ Our construction of the 1975 assent does not render meaningless the authorization to bargain provision of that assent. Indeed, the authorization itself is limited to "all matters contained in or pertaining to the current approved (1975) Inside labor agreement * * *." A signatory to such an authorization has empowered the Joliet chapter to act as its representative in negotiating amendments to the 1975 agreement and in arbitrating disputes concerning ambiguous language in same. The plain meaning of the words used in the authorization to bargain does not require us to construe the authorization as empowering the Joliet chapter to negotiate a completely new labor agreement, and in light of the custom and practice prevailing between the parties, we believe such a construction would be

totally contrary to the expectations of the parties and therefore wholly unjust.

■■ Following the attempt to solicit Peyla's assent to the 1977 agreement, Peyla continued to employ members of Local 176 and Peyla paid those tradesmen the wages and benefits required by the 1977 nationwide agreement negotiated between NECA and IBEW. The plaintiff-trustees strongly suggest that this partial adherence to the terms of the 1977 agreement constitutes a ratification thereof which defendant is now estopped to deny. It is true that a contract can be implied where the conduct of one party demonstrates an acceptance of the contract terms and a retention of benefits. (*George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1973), 12 Ill. App. 3d 362, 299 N.E.2d 601.) Here, however, we find absent from Peyla's conduct the acceptance of terms necessary to find ratification as a matter of law. No conduct of Peyla even hints at its acceptance of the NEIF provision included in the 1977 agreement. It did not formally assent to the fund, it did not verbally assent to the fund provision on an informal basis, and it did not make even the first payment to the fund. There was no act or omission which the trustees could have reasonably looked to as an indication of acceptance. Without such conduct, there cannot be said to exist a ratification of the inside agreement, and Peyla is not estopped to deny the validity of the 1977 contract.[1]

The second and third actions which we decide with this consolidated decision were brought by the trustees of the NEIF against G & S Electric Co. and Rae-Ann Electric Co., respectively. Like the defendant Peyla, G & S and Rae-Ann were both electrical contractors that hired tradesmen who were members of Local 176. Like the defendant Peyla, G & S and Rae-Ann had executed a series of assents to prior inside agreements between the Joliet chapter and Local 176. Like the defendant Peyla, G & S and Rae-Ann elected not to assent to the 1977 agreement and made no contributions to the NEIF as required by that agreement. We believe that the identity of facts between these three cases, not to mention the identity of the written and oral arguments of counsel, permits us to conclude that for the same reasons and in reliance on the same authority by which we approved the circuit court decision in Peyla, we should affirm the decisions in G & S and Rae-Ann.

---

[1] Our attention has been directed to the recent United States District Court decision in the case of National Constructors Association *et al.* v. National Electrical Contractors Association, Inc. *et al.* (D. Md. 1980), Civil No. HM 77-1302. Therein, the court determined that the NEIF provision in the NECA/IBEW model contract violates 15 U.S.C. 1. While illegal contracts are not subject to validation by ratification or invocation of the doctrine of estoppel (*Lyons v. Schanbacher* (1925), 316 Ill. 569, 147 N.E. 440), as this argument was not raised below, we decline to consider it here.

One additional issue does enter into the G & S and Rae-Ann cases that was not present in Peyla. Specifically, the plaintiffs-trustees argue that the court below improperly considered the testimony of Kenneth Stalzer in reaching its decision in G & S and Rae-Ann. They reason that since Stalzer testified as part of defendant Peyla's case in chief, then any reliance on his testimony in the other two cases was incorrect. It is clear that consolidation is permitted under the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 51), and one of the permissible applications of the power to consolidate allows the "integration of evidence at a joint trial" in the interest of convenience and economy. (*Shannon v. Stookey* (1978), 59 Ill. App. 3d 573, 375 N.E.2d 881.) We find no error in the instant cases by the judge's integration of evidence. For us to require this witness to repeat his testimony on three occasions in a consolidated trial defeats the very purpose of consolidation. Ill. Rev. Stat. 1979, ch. 110, par. 51.

For the reasons set forth above, and after considering all the arguments of counsel, we hold that the decisions reached below in each of the consolidated cases should be affirmed.

Affirmed.

ALLOY, P. J., and BARRY, J., concur.