GEORGE GEISBERGER, Plaintiff-Appellant, *v.* HANS WILLUHN, Defendant-Appellee.

Second District No. 77-556

Opinion filed June 1, 1979.

Andrews & Frew, of Rockford, for appellant.

Edwin D. Muderlak, of Pedderson, Menzimer, Conde, Stoner, Ferolie & Killoren, of Rockford, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This is a second appeal in this case. On September 17, 1976, the plaintiff filed a nine-count complaint for malicious prosecution against a total of nine defendants. Counts I, II, IV and IX, against the Cherryvale Security Systems, Inc., Marshall Field & Co. and the store manager, were dismissed for failure to state a cause of action. This court affirmed that dismissal in *Geisberger v. Vella* (1978), 62 Ill. App. 3d 941, 379 N.E.2d 947. Counts V, VI, VII and VIII against Carolyn Bergmark and the arresting officer, O. A. Gazouski, are still pending.

The facts in this case are set forth in our prior opinion of *Geisberger v. Vella.* Without going into detail, therefore, the complaint is based upon the fact that an employee of a physician furnished the name of the plaintiff as a possible suspect in the armed robbery of the Marshall Field store in Cherryvale Shopping Mall, located in Cherry Valley, Illinois. He was arrested and the criminal case against him was subsequently dismissed.

On June 30, 1977, the plaintiff filed a supplemental three-count complaint against the defendant, Dr. Hans Willuhn, under three different legal theories. Count X alleged that the disclosure of plaintiff's name by Carolyn Bergmark, the employee of the defendant Dr. Willuhn, constituted a breach of the physician-patient privilege established by section 5.1 of "An Act in regard to evidence * * *" (Ill. Rev. Stat. 1973, ch. 51, par. 5.1). Count XI alleged that the disclosure of the plaintiff's name constituted a breach of an implied contract not to divulge confidential information acquired through the physician-patient relationship. Count XI further alleged that this implied contract arose out of custom and usage in the community; the statutory physician-patient privilege set out in section 5.1 (Ill. Rev. Stat. 1973, ch. 51, par. 5.1); the Hippocratic oath and the Canons of Medical Ethics. Count XII alleged that the disclosure of plaintiff's name, resulting in his arrest, constituted an invasion of privacy. The trial court dismissed all three counts for failure to state a cause of action and the plaintiff appeals.

This is a matter of first impression in the State of Illinois as to the right of a patient to recover damages from a physician for the alleged unauthorized disclosure of confidential information. In this case the only confidential information released by the employee of the doctor was the name of the patient. This issue has been the subject of litigation in other States and attention is directed to the annotations found in 20 A.L.R.3d 1109 (1968).

The only question presented here is whether the disclosure of a patient's name by a doctor or his employee is sufficient to support a cause of action.

■■ Unlike the attorney-client relationship, the common law does not

recognize a privilege for communication between a doctor and a patient. (See 8 Wigmore on Evidence §2380 (McNaughton rev. 1961).)[1] Illinois has statutorily protected from disclosure certain information obtained by a physician in his professional relationship with a patient. (Ill. Rev. Stat. 1977, ch. 51, par. 5.1.) Whether a patient's name is protected, therefore, depends entirely on the extent of the privilege granted under that paragraph. That statute provides, in pertinent part, as follows:

> "No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, *necessary to enable him professionally to serve such patient,* * * *." (Emphasis added.)

The privilege is extended to "any information" acquired by a physician in a professional capacity which is "necessary" to enable him to "serve" his patient. The Illinois statute is similar, in substance, to those of other States and confines the privilege to information concerning the patient's medical condition or the physician's diagnosis and treatment. The disputed communication, to be within the rule of this exclusion, must have been necessary for the performance of a professional duty on the part of the physician. That is, a duty to treat, prescribe or act for the patient. We find this spelled out in Corpus Juris Secundum:

> "* * * the privilege exists as to, and only as to, information necessary to enable the physician to act or serve in a professional capacity, that is, to information necessary to act or prescribe for the patient, or diagnose or treat his ailments, * * *." (97 C.J.S. *Witnesses* §295(b)(2) (1957).)

Most of the jurisdictions who have passed upon the question presented here have, in the great majority, held that the name and address of a patient alone is not confidential information protected by the statutory provision of privilege. See, *e.g., Ascherman v. Superior Court* (1967), 254 Cal. App. 506, 62 Cal. Rptr. 547, where the court held that the name of the patient had no relation to treatment by the physician or to the ailment of the patient as the physician need not know the name of the patient in order to treat him, and was, therefore, not privileged information. (See also *Marcus v. Superior Court* (Cal. App. 1971), 95 Cal. Rptr. 545; *Kaplan v. Manhattan Life Insurance Co. of New York* (D.C. Cir. 1939), 109 F. 2d 463; *Wolf v. People* (1947), 117 Colo. 279, 187 P.2d 926.) Likewise, the name of the patient is not privileged under New York or Federal law. (*In re Albert Lindley Lee Memorial Hospital* (2d Cir. 1953), 209 F.2d 122.) The only case to the contrary, apparently, is that of *Schechet v. Kesten* (1964), 372 Mich. 346, 126 N.W.2d 718. The cases cited by the plaintiff

---

[1] As to disclosure of a client's name by his attorney, we have recently held the client's *name* is not within the scope of the attorney-client privilege. See *People v. Doe* (1977), 55 Ill. App. 3d 811, 371 N.E.2d 334.

herein are clearly distinguishable from the majority opinion quoted above. *Costa v. Regents of University of California* (Cal. App. 1952), 247 P.2d 21, *rev'd on other grounds* (1953), 116 Cal. App. 2d 445, 254 P.2d 85, and *Marcus v. Superior Court* (Cal. App. 1971), 95 Cal. Rptr. 545, involved plaintiffs in malpractice actions who were seeking the names of other patients treated by the defendant doctors. In *Marcus* the court said:

"We recognize that the disclosure of a patient's name does not necessarily violate the privilege. * * * In the case at bench it is not merely the disclosure of the name and address, but the joining of that information with the limitation in the question that these were patients who had received the specified tests." 95 Cal. Rptr. 545, 547.

■■ Finally, in a related context, the name and the identity of a client does not generally qualify as confidential information protected from disclosure by the attorney-client privilege. (*Leindecker v. Waldron* (1869), 52 Ill. 283.) We follow the overwhelming majority of the courts of the United States which have held that the disclosure of the name alone of the patient by a doctor or his agents does not violate the patient-doctor privilege established by section 5.1. (Ill. Rev. Stat. 1973, ch. 51, par. 5.1.) Having held that the disclosure of the plaintiff's name does not violate section 5.1, it is unnecessary to consider whether the defendant physician can be held liable when any unauthorized disclosure is made by an employee. We need not reach the very vicarious liability which might arise under the statutory privilege which specifies physicians and surgeons and includes agents of the physicians only by implication. In a number of cases, for example, the privilege has been denied to nurses on the theory that it is in derogation of the common law and should be particularly confined to those expressly named. On the other hand, other courts have recognized the privilege for agents, specifically nurses, on the view that it would be ineffective if agents could, in fact, testify. See 61 Am. Jur. 2d *Physicians and Surgeons* §102 (1972), and Annot., 47 A.L.R.2d 742 (1956).

■■ The second issue presented is whether the plaintiff's complaint herein, found in count XI, states a cause of action for the breach of an implied contract not to disclose confidential information acquired through the physician-patient relationship. We find that, for all practical purposes, the breach of a confidential relationship and the breach of contract are probably co-extensive. In other words, those disclosures which violate the statutory privilege also define what is actionable under a contract theory. The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, *e.g.*, information relating to the patient's mental or physical condition or the physician's diagnosis or treatment. (See *Horne v. Patton* (Ala. 1974), 291 Ala. 71, 287 S.2d 824, 831.) The prohibition on disclosures contained in section 5.1 of the Illinois statute, the Hypocratic oath and of

the Canon of Medical Ethics support this conclusion. See Annot., 20 A.L.R.3d 1109 (1968).

 The remaining issue presented in this case is as to whether the plaintiff's complaint, found in count XII, states a cause of action toward the invasion of privacy. The four forms of invasion of privacy recognized in the law are: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; and (d) publicity that unreasonably places the other in a false light before the public. (See Restatement (Second) of Torts §652A (1977).) Count XII is evidently an attempt to state a cause of action for the public disclosure of private facts. This form of invasion of privacy requires the information disclosed relate to the private, as opposed to the public life of the plaintiff, and the name of the plaintiff, in itself, does not constitute such an invasion of privacy. As an example, there is no liability for publicity given to matters of public record such as the date of birth, fact of marriage, etc. (See Restatement (Second) of Torts §652D (1977).) The matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities. (See Prosser on Torts §117 (4th ed. 1971).) Those cases which recognize the privacy cause of action for the unauthorized disclosure of information by a physician have all involved the publication of facts relating to either the plaintiff's medical condition or the physician's diagnosis or treatment. We do not find that to be the situation here at all, as the only disclosure was the name of the plaintiff.

We therefore find that the "First Amended Complaint as to Additional Defendant," filed by the plaintiff against the defendant Hans Willuhn, containing the aforementioned counts, does not state a cause of action under Illinois law. We therefore affirm the decision of the trial court dismissing that complaint as to the defendant doctor.

Affirmed.

SEIDENFELD and NASH, JJ., concur.