BENJAMIN J. RASKY, Plaintiff-Appellant, *v.* COLUMBIA BROADCASTING SYSTEM, INC., a/k/a CBS-WBBM, *et al.*, Defendants-Appellees.

First District (1st Division)    Nos. 80-361, 80-788, 80-1519 cons.

Opinion filed November 23, 1981.—Rehearing denied February 1, 1982.

Benjamin A. Rasky, of Skokie, for appellant, *pro se*.

Don H. Reuben, Lawrence Gunnels, and Samuel Fifer, all of Reuben & Proctor, David W. Andich and Gerald A. Niederman, both of Roan & Grossman, Steven Lubet, of Northwestern University Legal Clinic, and Susan Connell and James O. Latturner, both of Legal Assistance Foundation of Chicago, all of Chicago, for appellees.

JUSTICE McGLOON delivered the opinion of the court:

Plaintiff, *pro se*, instituted an action to recover damages from defendants for defamation, trespass, invasion of privacy and civil conspiracy. The trial court granted defendants' motion to dismiss plaintiff's complaint. Plaintiff now appeals.

On appeal, plaintiff claims that the trial court erred in dismissing plaintiff's complaint charging defendants with defamation, trespass and invasion of privacy. We have considered plaintiff's arguments regarding the trespass and invasion of privacy issues and find them to be without

merit. We will therefore limit our discussion to the defamation issues raised by plaintiff.

We affirm.

Before we discuss the merits of the issues raised in this appeal, it is essential that we print in full the allegedly defamatory statements which inspired the suit brought by Benjamin Rasky (plaintiff). On February 18, 1977, defendant Columbia Broadcasting System, Inc. (CBS) broadcast a news telecast prepared and delivered by defendant Susan Anderson. The text of the telecast reads as follows:

"ANDERSON: There's a law on the books which makes it a crime for a landlord to neglect his property and jeopardize the health and safety of his tenants. That law has never been used, until now. Citizens of the Edgewater community—primarily those who live in the Kenmore-Winthrop corridor—are now using this law to strike back. People here are fed up with their neighborhood deteriorating. One eyesore they've targeted is Tourraine [sic]. The building's owner is Benjamin Rasky, a LaSalle Street Lawyer. Edgewater citizens say Rasky is a slumlord. To back up their charge, they point to falling plaster, peeling paint, exposed wiring and rats. One tenant here is Albert Griffin.

GRIFFIN: I noticed the toliet wouldn't flush, so I tried the facebowl. There weren't no water. Then I tried the bathtub—no water. (At this point, Mr. Griffin made a point concerning the controls under the sink which was inaudible.)

ANDERSON: And how much have you paid for this place? What's the rent?

GRIFFIN: One-hundred and twenty-five dollars.

ANDERSON: That one-hundred and twenty-five dollar figure is the maximum public aid lets its recipients pay for a so-called furnished apartment. Residents who live near this building say it was an attractive place * * * that is, until Rasky took it over three years ago.

ANDERSON: Dave Wallher [sic], Edgewater Community Council * * *

WALLHER [sic]: He just milked this building for whatever he could get out of it. He hasn't put anything into it. And, a building of this size, it's attracted the types of persons that are perpetrating much of the crime in this area.

ANDERSON: The citizens here have hauled Rasky into housing court for years * * * but they say he merely pays the fines for building violations as a cost of doing business and never bothers with repairs. At that point, the district's state representative found

the slumlord law on the books. The result? Today, the state filed a complaint. Ellis Levin, 12th District Representative * * *

LEVIN: Clearly, in cases like this, the traditional remedies, uh, building court and also criminal housing management are just not working. And so, you know, through the approach of going after an individual's livelihood, his real estate license, hopefully we'll be able to exert an awful lot more influence in the future. It's a new vehicle, available to government and available to community groups.

ANDERSON: If Rasky is found guilty, his real estate license can be revoked. That means he can no longer buy, sell, rent or manage any property ever again in this state. Rasky was too ill to be interviewed today but he did tell me he's not a slumlord. He says he's been plagued with people who've moved in as squatters, with building managers who've pocketed his rents and with police who've not curbed the vandals and hoodlums. Walter * * *."

On February 20, 1977, defendant Gloria Bittner, chairperson of defendant Organization of the Northeast (ONE), gave a speech in which she mentioned plaintiff. She said:

"The traditional building court route has failed to force Rasky to bring these buildings into full compliance, despite the arsenal used by judges, such as orders, fines, contempt citations, injunctions, receiverships and escrow arrangements."

Plaintiff's complaint attributed four allegedly defamatory statements to defendant Representative Ellis B. Levin. In a telephone interview, Levin stated:

"Clearly, in cases like this, the traditional remedies, uh, building court and also criminal housing management are just not working. And so, you know, through the approach of going after an individual's livelihood, his real estate license, hopefully, we'll be able to exert an awful lot more influence in the future. It's a new vehicle, available to government and available to community groups."

Levin was quoted in the Sunday Star as saying:

"I hope this will set a strong precedent for the future widespread use of this rule as a new weapon in the fight against slum landlords."

He was quoted in the Chicago Tribune as saying:

"The case would prove to be a landmark that opens up a whole new way to go after slumlords."

Levin distributed the following news bulletin to his constituents:

"FIRST COMPLAINT FILED TO REVOKE SLUMLORD'S REAL ESTATE LICENSE.

A new method for combatting slum landlords was developed when Rep. Levin, Edgewater Community Council Safety Program and Edgewater Residents Together in Action (ERTIA) filed the first complaint with the Ill. Dept. of Registration and Education to revoke a landlord's real estate broker license.

The approach is aimed at stopping slum landlords when Building Court fails. 'If a slumlord's license is threatened,' Levin said, 'he is more likely to clean up the building.' The complaint charged that Benjamin A. Rasky operated four buildings with dangerous conditions and several hundred building code violations at 5303-09, 5621-25 and 5726-28 Winthrop and 832 Gunnison."

On November 11, 1977, defendant Chicago Reader, Inc., published an article entitled "Why Ellis Levin Is A Marked Man." The article was written by defendant Don Rose. It stated:

"One agency he [Ellis Levin] recently got to do its job is the Illinois Department of Registration and Education, which licenses real estate operators but never saw fit to crack down on slum landlords until Levin lit the fuse. The result: for the first time in history a slum landlord operating in Uptown, Benjamin A. Rasky, is under the gun to fix up his places or lose his license."

Plaintiff alleged in the trial court that each of the aforementioned statements was libelous. All of the defendants moved to dismiss plaintiff's complaint for failure to state a cause of action. The trial court granted defendants' motions, and plaintiff now appeals.

■■■ In order to determine whether particular language constitutes libel *per se*, Illinois courts employ the "rule of innocent construction." The rule holds that an allegedly libelous statement is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law. (*Valentine v. North American Co.* (1974), 60 Ill. 2d 168, 171, 328 N.E.2d 265; *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148.) If a statement is capable of two constructions, one of them defamatory and the other innocent, the innocent construction must be chosen. Whether the language used is susceptible of an innocent construction is a question of law to be resolved by the courts. 60 Ill. 2d 168, 171; *Zeinfield v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 347, 243 N.E.2d 217.

Plaintiff was referred to as a "slum landlord" or "slumlord" by several of the defendants in this action. Black's Law Dictionary defines a "landlord" as one who, "being the owner of an estate in land, or a rental property, has leased it to another person * * * ." (Black's Law Dictionary 790 (5th ed. 1979).) It defines "slum" as a "squalid, run-down section of a

city, town or village, ordinarily inhabited by the very poor and destitute classes * * * ." (Black's Law Dictionary 1245 (5th ed. 1979).) Based on these definitions and applying the innocent construction rule, the terms "slum landlord" and "slumlord" can be construed to mean that plaintiff owned buildings in a poor and dirty neighborhood or, simply stated, that plaintiff was a landlord in a slum.

▆▆ In the trial court, plaintiff attempted to avoid the legal impact of the innocent construction rule by offering other dictionary definitions of the phrase "slum landlord." In effect, he suggested that if any conceivable definition of the phrase might be defamatory, then it cannot be innocently construed. We believe the trial court properly rejected plaintiff's interpretation of the rule. We agree that a proper application of the rule of innocent construction necessitates a finding that the term "slumlord" or "slum landlord," as used in the several publications, is susceptible of an innocent construction.

▆▆ Moreover, the meaning of an allegedly libelous statement must be gathered not only from words singled out, but also from the context of the statement. (*Bravo Realty, Inc. v. Columbia Broadcasting System, Inc.* (1980), 84 Ill. App. 3d 862, 865, 406 N.E.2d 61.) It must be determined whether the "gist" or "sting" of the statement, taken as a whole, is capable of an innocent construction. (See *Kilbane v. Sabonjian* (1976), 38 Ill. App. 3d 172, 347 N.E.2d 757.) The overall thrust of the CBS news telecast was that citizens in the community were bitterly opposed to the way in which they perceived that plaintiff managed his buildings and, that through their representatives, they intended to explore available legal remedies for redress. In that context, the report noted that Edgewater citizens have accused plaintiff of being a "slumlord," have previously taken legal action against him, and claim he does not make repairs. In our opinion, the CBS news telecast, taken as a whole, is capable of an innocent construction and cannot be considered defamatory as a matter of law.

▆▆ Similarly, we believe that the statement attributed to defendant Gloria Bittner can be innocently construed. Bittner simply asserted that the courts have failed to force plaintiff to comply with the building code. Her statement was a criticism of the judicial system rather than an impugnment of plaintiff. It therefore must be considered nonactionable as a matter of law.

▆▆ A reason why plaintiff's claim against all defendants must fail is that publication of a falsehood is not libel *per se* unless, on its face, it charges: (1) commission of a crime; (2) infection with a loathsome disease; (3) unfitness or want of integrity in performing the duties of an office or employment; or (4) lack of ability in plaintiff's business, trade or profession. (*Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 456, 395 N.E.2d 1185; *Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 264, 371

N.E.2d 874.) An action based on libel *per se* requires a serious charge of incapacity or misconduct in words so obviously and naturally hurtful that proof of their injurious character is dispensed with. 77 Ill. App. 3d 452, 456.

■■ Plaintiff claims that the allegedly defamatory statements made by all defendants (except Gloria Bittner and ONE) are libelous *per se* because they charge him with the commission of a crime. More specifically, he maintains that the publications charged him with the crime of criminal housing management (Ill. Rev. Stat. 1979, ch. 38, par. 12—5.1(a)). This statute provides that one is guilty of the offense of criminal housing management when he "knowingly permits by his gross carelessness or neglect the physical condition or facilities of the residential real estate to become or remain so deteriorated that the health or safety of any inhabitant is endangered." Illinois cases have held that words imputing the commission of a crime are libelous *per se* only if the offense is indictable, involves moral turpitude and is punishable by death or imprisonment rather than by a fine. (*Bruck v. Cincotta* (1977), 56 Ill. App. 3d 260, 264, 371 N.E.2d 874; *Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 60, 223 N.E.2d 419.) Even if we were to accept plaintiff's argument that the publications charged him with the commission of this crime, it still would be insufficient to support a charge of libel *per se* since such an accusation is in no way tantamount to a charge of involvement in a crime involving moral turpitude.

■■ Additionally, plaintiff contends that defendants' statements impugned his professional fitness as a lawyer and as a real estate operator. In a license revocation proceeding before the Illinois Department of Registration and Education, plaintiff filed an affidavit in which he represented that the practice of law was his sole vocation from 1929 to the date of the affidavit, April 1977. In light of this representation, he cannot now claim that his professional reputation as a real estate operator was impugned. Since none of defendants' statements alluded to plaintiff's qualifications or competence as a lawyer, we must reject plaintiff's contention that his professional fitness as a lawyer was attacked. See generally *Reed v. Albanese* (1966), 78 Ill. App. 2d 53, 223 N.E.2d 419; *Hambric v. Field Enterprises, Inc.* (1964), 46 Ill. App. 2d 355, 196 N.E.2d 489.

For the foregoing reasons, we affirm the trial court order dismissing plaintiff's claim against all defendants in this suit.

Order affirmed.

CAMPBELL, P. J., and GOLDBERG, J., concur.