AUDITION DIVISION, LTD., Plaintiff-Appellant, *v.* BETTER BUSINESS BUREAU OF METROPOLITAN CHICAGO, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 82—1524

Opinion filed December 14, 1983.

Martin & Karcazes, Ltd., of Chicago (George D. Karcazes and Michael S. Holzman, of counsel), for appellant.

Reuben & Proctor, of Chicago (Lawrence Gunnels, Samuel Fifer, and Barry Ginsberg, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Audition Division, Ltd., brought this action against defendants seeking money damages for libel and tortious interference with existing and prospective contracts. The trial court granted summary judgment in favor of defendants, and plaintiff appeals.

Plaintiff is a talent and modeling agency for children and adults. Prospective models or their parents forward applications to plaintiff for its review. Following this initial screening, the prospective models are called in for a video-taped audition. If the audition is successful, plaintiff attempts to contract with the model for a three-year period to refer video and audio tapes, as well as photographs, to the Geddes Agency. Plaintiff charges a set fee for its referral services. Geddes handles all placements, and both plaintiff and Geddes receive a 10% fee from all individuals who receive modeling jobs.

Defendant Better Business Bureau (BBB) is a not-for-profit corporation which, according to its policy manual, "promotes truth in advertising and selling; maintains an impartial attitude towards firms and individuals; and is dedicated to the building and preservation of public confidence in legitimate business." BBB provides verbal and written information to consumers on its member companies. It also acts as a clearinghouse for complaints regarding its members. Plaintiff became a member of BBB in 1974 and continued its membership until 1978 when the present action was filed. The remaining defendants are officers and employees of BBB.

The action here is based on six separate reports sent by BBB to consumers about plaintiff starting in February 1976. After a considerable amount of discovery, defendants filed a motion for summary judgment on November 25, 1981. Numerous affidavits, exhibits and

depositions were filed. On May 4, 1982, after reviewing the record and hearing arguments, the trial court issued a written memorandum of law in support of its order granting summary judgment to defendants on all counts.

Summary judgment is proper where there is no genuine issue of material fact. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197.) The evidence is construed strictly against the movant and liberally in favor of the opponent. (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.) Summary judgment is a procedure to be encouraged to avoid the unnecessary expense of trial. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60.) Yet, the right of the movant to summary judgment must be free and clear from doubt. (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197.) The trial court's determination will not be reversed unless an abuse of discretion is shown such that a party's right to fundamental justice is violated. *Chandler v. Jet Air Freight, Inc.* (1977), 54 Ill. App. 3d 1005, 370 N.E.2d 95.

■ Plaintiff first argues that the BBB reports constitute libel *per se*. The determination of whether a writing is libelous *per se* is one of law. (*Von Solbrig Memorial Hospital v. Licata* (1973), 15 Ill. App. 3d 1025, 305 N.E.2d 252.) Malice and damages are presumed. (*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 415 N.E.2d 434.) In order to be libelous *per se*, where the plaintiff is a corporation, the writing must assail the corporation's financial or business methods or accuse it of fraud or mismanagement. *Vee See Construction Co. v. Jensen & Halstad, Ltd.* (1979), 79 Ill. App. 3d 1084, 399 N.E.2d 278; *Garber-Pierre Food Products, Inc. v. Crooks* (1979), 78 Ill. App. 3d 356, 397 N.E.2d 211.

The BBB reports must be read in their entirety stripped of innuendo, the meaning taken not only from the words but also from the context of the statement. (*Rasky v. Columbia Broadcasting System, Inc.* (1981), 103 Ill. App. 3d 577, 431 N.E.2d 1055.) The BBB reports contain information on plaintiff, in part supplied by plaintiff itself. The reports indicate when plaintiff was incorporated, the names of its officers, the nature of its business, and the fact that a large number of inquiries have been made about plaintiff. The reports point out provisions in plaintiff's contract that plaintiff and Geddes both receive a 10% fee on all placements and that placement is not guaranteed. The reports also include a description of the number and types of complaints received within a particular period and their resolution, if any.

Several of the reports state that parents should read and understand the contract before signing. Beginning with the January 1980 report, BBB also notified consumers that it had been sued by plaintiff.

■■ Plaintiff contends that the reports falsely describe its business operations and communicate to the reader that plaintiff resorts to dishonest methods of soliciting clients. Plaintiff points to a series of statements in the reports which are libelous, among them misquoted prices, statements that plaintiff does not see children prior to audition when it does do so, that plaintiff does not place children in television commercials when Geddes does handle such placements, that plaintiff pressures clients to sign contracts and tells parents that their children have a very good chance of working as a model, and that the information in the reports is supplied by plaintiff leading some readers of the reports to believe that all the information is supplied by plaintiff. Furthermore, plaintiff argues that the reports do not reflect favorable information which it supplied to the BBB.

None of these statements are defamatory on their face. They do not accuse plaintiff of fraud or mistake or impugn its business integrity. Words which are critical are not necessarily actionable. (*Garber-Pierre Food Products, Inc. v. Crooks* (1979), 78 Ill. App. 3d 356, 397 N.E.2d 211.) Several of the statements are not false. Plaintiff's president admitted that it solicited clients by mail based on mailing lists which it purchased and that almost always the child had not been seen, and that plaintiff did in fact supply information used·in the reports. It was also undisputed that plaintiff does not make any placements, but merely refers clients to Geddes.

In determining whether a writing is libelous *per se*, the Illinois courts apply the rule of innocent construction. (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105, *cert denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148.) The statements are read as a whole and are given their natural and obvious meaning. (*Rasky v. Columbia Broadcasting System, Inc.* (1981), 103 Ill. App. 3d 577, 431 N.E.2d 1055.) This preliminary determination is resolved by the court as a matter of law. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195.) Previously, the courts had strained to find any innocent construction, but the court in *Chapski* modified the rule to require a reasonable innocent construction.

The BBB reports are issued to consumers to provide information. The information is conveyed in a straightforward, dispassionate manner. The language of the reports is not obviously and naturally hurtful. (*Makis v. Area Publications Corp.* (1979), 77 Ill. App. 3d 452, 395 N.E.2d 1185.) The reports here are reasonably capable of innocent

construction. As such, plaintiff's claim of libel *per se* fails.

Plaintiff also contends that the BBB reports constitute libel *per quod*. An action for libel *per quod* is established where a publication not libelous on its face, is rendered defamatory by extrinsic facts or innuendo and special damages are proved. *Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 415 N.E.2d 434; *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 221 N.E.2d 516.

■■ We need not reach the issue of whether plaintiff has proved special damages because plaintiff has not provided extrinsic facts which render the reports defamatory. The reports must be viewed in context, read as a whole with words given their natural and obvious meaning. (*Allen v. Ali* (1982), 105 Ill. App. 3d 887, 435 N.E.2d 167.) As we have noted, the reports are issued to consumers who specifically inquire about plaintiff. Plaintiff contends that the reports falsely allege that it pressures clients to sign contracts, promises services it does not deliver and does not screen its applications. Plaintiff apparently maintains that the reports as a whole convey to consumers that plaintiff is a fraud and a sham and that consumers should beware. We have already made the determination that the reports on their face do not impugn plaintiff. With its claim that the report conveys that it is a fraudulent business, plaintiff has not pleaded or shown any extrinsic facts which would render the reports libelous *per quod*. We agree with the trial court that the reports, in a business-consumer context, are not actionable.

■ Plaintiff also contends that the trial court erred in granting summary judgment for defendants on its claim of tortious interference with contractual relationships.

The elements of tortious interference with existing contracts are: the existence of a valid contract; defendant's knowledge of the contract; the intentional and malicious inducement of the breach; a subsequent breach; and damages resulting from the breach. (*National Educational Advertising Services, Inc. v. Cass Student Advertising, Inc.* (N.D. Ill. 1977), 454 F. Supp. 71; *Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 275 N.E.2d 429.) To establish a claim for tortious interference with a prospective contractual relationship, plaintiff must have a reasonable expectation of entering into a valid business relationship, defendant must know of the expectancy and intentionally and maliciously interfere to defeat the expectancy, and plaintiff must be injured. (*American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297; *Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 385 N.E.2d 714.) There must be a showing of malice.

Plaintiff has only alleged that defendant Baumhart stated to plaintiff's president that he would never put anything in the BBB reports to help plaintiff and that BBB continued to issue reports after plaintiff notified it of the adverse effect on plaintiff's business. Malice is the intent to wrongfully harm someone without just cause. (*Clifton-Strode, No. 2, Inc. v. Kent* (1982), 110 Ill. App. 3d 525, 442 N.E.2d 666.) Plaintiff's conclusory allegations that defendants were carrying out a "personal vendetta" to destroy plaintiff are insufficient as a matter of law. (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998.) The trial court properly granted summary judgment on plaintiff's claim of tortious interference with contractual relationships.

■■ We also find that defendants properly assert their conditional privilege to speak freely in the interest of the public good. (*Panter v. Marshall Field & Co.* (7th Cir. 1981), 646 F.2d 271, *cert. denied* (1981), 454 U.S. 1092, 70 L. Ed. 2d 631, 102 S. Ct. 658; *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297.) In order for the privilege to apply, defendant must have acted in good faith to protect an interest or uphold a duty. The statement must be limited in scope and purpose, and the publication made to proper parties in a proper manner. (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 150 N.E.2d 202; see Restatement (Second) of Torts sec. 772 (1979).) Each of these elements is met by BBB in the present case. The reports were released only to consumers specifically requesting them in conformance with BBB's public service goals. BBB followed its established procedures to verify the information contained in the reports and published them in good faith.

Plaintiff's reliance on the holding in *Antwerp Diamond Exchange of America, Inc. v. Better Business Bureau of Maricopa County, Inc.* (1981), 130 Ariz. 523, 637 P.2d 733, where the court reversed an award of summary judgment for defendant, is misplaced. There, plaintiff also alleged that defendant's reports were libelous and tortiously interfered with plaintiff's contractual relations. In that case, however, the reports specifically stated that the plaintiff company had been accused of fraud and misrepresentation and was under investigation. Defendant continued publishing the report even after it received notice that a judicial finding had been made that the claims of fraud were without merit. The report was later changed to incorporate a statement that defendant believed that the judge had erred. The contents of the report, defendant's failure to ascertain the truth, and its possible abuse of its privilege raised questions of fact precluding sum-

mary judgment. The reports here were not libelous, and there is nothing to indicate that BBB abused its conditional privilege.

In view of our holding that the reports are not libelous and do not constitute tortious interference with contractual relationships, we need not address the propriety of the trial court's denial of plaintiff's request for injunctive relief.

■ Plaintiff finally contends that the trial court erred in denying its additional requests for discovery.

A trial court has wide discretion in determining the scope of discovery and absent a clear abuse of discretion, the trial court's decision will not be disturbed. *Cohn v. Board of Education* (1970), 118 Ill. App. 2d 453, 254 N.E.2d 803.

The record indicates that intensive discovery was conducted over three years. BBB produced copies of complaints and inquiries relating to plaintiff and to other member companies. Plaintiff took depositions of members of BBB's board of directors, its employees and the officers named as defendants. In its additional discovery request, plaintiff asked for all documents relating to companies with two or more complaints over a certain 18-month period, documents relating to companies on which BBB does not issue a written report, and documents relating to meetings of BBB's board of directors. Considering the amount of discovery already produced, we agree with the trial court that plaintiff's request was onerous and involved material not relevant to the case. The request was properly denied.

For the reasons stated, the order of the circuit court of Cook County granting summary judgment to defendants and denying plaintiff's request for injunctive relief and additional discovery is affirmed.

Order affirmed.

RIZZI and WHITE, JJ., concur.