Tom F. PRUITT, Plaintiff-Appellant,

v.

Edward R. CHOW, Kerry W. Pearson, and John J. Placek, Defendants-Appellees.

No. 83–3163.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1984.

Decided Sept. 5, 1984.

Tom F. Pruitt, Denver, Colo., pro se.

James R. Schirott, Schirott & Elsner, Itasca, Ill., for defendants-appellants.

Before WOOD and FLAUM, Circuit Judges, and GIBSON, Senior Circuit Judge.*

FLAUM, Circuit Judge.

In this diversity action, the appellant has complained of defamation and various other torts allegedly committed by the defendants. The district court granted summary judgment in favor of the defendants. We affirm.[1]

I.

From September 1981 until April 1983, the defendant Edward Chow was an employee of Biosynergy, Inc. (BSI), an Illinois corporation. In mid-March of 1983, Chow, who was then Vice President of Finance and Budget of BSI, had a dispute with the management of BSI allegedly related to performance and to a stock option that Chow claimed had been promised him. At this time, Chow retained defendants Placek and Pearson, both attorneys, to represent him in connection with his employment difficulties.

On March 20, 1983, Chow drafted a letter to Fred Suzuki, BSI's president. In the beginning of the letter, Chow stated:

I believe it is my duty, as Vice-president of Finance and Budget, to raise the matters contained in this letter in light of the planned public offering of stock in Liquid Crystal Products, Inc. (LCP), now

---

* The Honorable Floyd R. Gibson, Senior Circuit Judge of the Eighth Circuit Court of Appeals, is sitting by designation.

1. We are basing our decision on grounds somewhat different from those stated by the district court, which is our prerogative. *See Panter v. Marshall Field & Co.,* 646 F.2d 271, 281 (7th Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).

known as Biosynergy, Inc. (BSI). Numerous items which, I believe, have not yet been disclosed should now be disclosed to protect the company's shareholders and to protect the company, its officers and directors, from any legal repercussions stemming from possible violations of federal and state securities laws.

Chow's letter then went on to outline several possible securities law violations. These included a memorandum relating to private placement of BSI securities that Chow claimed contained false and misleading information, and a possibly undisclosed arrangement between Suzuki and the plaintiff Tom Pruitt, a Denver attorney, whereby Pruitt allegedly was paid fees for assisting BSI in fundraising. Chow's letter also included a demand for the stock option to which he claimed he was entitled.

On March 21, Chow personally delivered this letter to Placek, who requested and received Chow's assurances that Chow believed its contents were truthful and accurate. That same day, Placek passed the letter along to Pearson. Later that day, Pearson personally delivered the letter to the BSI corporate office in a sealed envelope addressed to Suzuki and marked "personal and confidential." Also in this envelope was a letter from Pearson to Suzuki. This letter stated, in essence, that Chow hoped to settle his dispute with BSI amicably, but that if Suzuki did not contact Pearson or Placek by the next day, the defendants would send a copy of Chow's and Pearson's letters to the Securities and Exchange Commission (SEC) and to BSI's lawyers and accountants, and they would begin preparation for a lawsuit against BSI. The defendants never actually sent the two letters to the SEC, but they did send a copy of Chow's letter to Pruitt. This was their only transmission of Chow's letter other than the transmission to Su-

zuki. Chow's letter was sent to the SEC and other third parties, however, by Suzuki himself.

Pruitt then brought this action in federal district court. He complained that Chow's letter had defamed him and placed him in a "false light" in the public eye, and that the defendants' actions amounted to an intentional infliction of emotional distress. He also claimed that the defendants committed the tort of "abuse of process" by threatening to send Chow's letter to the SEC and by threatening a civil suit.[2] After hearing the parties' arguments and reviewing the parties' affidavits and other documentary evidence, the district court ruled that Chow's letter was privileged and granted summary judgment in favor of the defendants. This appeal followed.

## II.

We turn first to the plaintiff's defamation claim. The plaintiff argues that Chow's letter defamed him and that it was not a privileged communication because it was not made in good faith. The plaintiff also claims that the defendants should be held responsible for publishing the letter not only to Suzuki, but to the SEC and other third parties. The defendants respond by arguing that Chow's letter was not defamatory, and that even if it was defamatory, its transmission to Suzuki was privileged. The defendants also contend that they are not legally responsible for publication of the letter to anyone but Suzuki.

■ An essential ingredient of libel is a publication. *Ginsburg v. Black,* 237 F.2d 790, 791, 793 (7th Cir.1956), *cert. denied,* 353 U.S. 911, 77 S.Ct. 669, 1 L.Ed.2d 665 (1957). We agree with the defendants that they did not "publish" Chow's letter to the SEC or any third party. The plaintiff's

---

**2.** Pruitt also complained that Chow's letter constituted an "injurious falsehood." He has not cited, however, any Illinois cases that discuss this tort. Our research has revealed only one reference to "injurious falsehood" in the Illinois case law. In *Streif v. Bovinette,* 88 Ill.App.3d 1079, 1082, 44 Ill.Dec. 372, 375, 411 N.E.2d 341,

344 (1980), the court stated that the tort of "commercial disparagement," where a person intentionally and falsely disparages another's business, also is known as "injurious falsehood." Because we find that Chow's letter was not defamatory of Pruitt, it follows that Pruitt's "injurious falsehood" claim should fail as well.

theory is that by making a threat to Suzuki that they would send the letter to the SEC and others, the defendants forced Suzuki to disseminate the letter himself or at least should have expected that Suzuki would have disseminated the letter himself, since they knew that BSI was in the process of registering its securities with the SEC. The plaintiff has cited no case law to support this theory, and we see no reason to accept the theory. Although Suzuki may have been obligated to disclose to the SEC the possibility of litigation between BSI and Chow, Suzuki was not obligated to simply pass on to the SEC the allegedly defamatory statements made by Chow, without refutation or comment. Moreover, the defendants threatened to disseminate Chow's letter only if Suzuki refused to negotiate about Chow's stock option demand. Thus, the defendants actually expressed a desire to avoid the dissemination of Chow's letter. Under these circumstances, we hold that the defendants did not punish Chow's letter to anyone but Suzuki.[3]

It follows that the only allegedly defamatory publication that we must consider is the publication from Chow to Suzuki, through Placek and Pearson. We find as a matter of law that Chow's letter to Suzuki did not defame Pruitt. Thus, we need not address the question of whether the publication was privileged.

■ A central feature of Illinois defamation law, which is the appropriate body of law to be applied in this diversity case, is the "innocent construction" rule. That rule, as modified two years ago by the Illinois Supreme Court, is:

[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably

be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.* This preliminary determination is properly a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory or to refer to the plaintiff is a question for the jury should the initial determination be resolved in favor of the plaintiff.

*Chapski v. Copley Press, Inc.,* 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 888, 442 N.E.2d 195, 199 (1982). Applying this rule to the facts of this case, it is clear that Chow's letter to Suzuki cannot be actionable. The plaintiff has complained specifically about two parts of the letter that he claims contained false and defamatory statements. First is a reference to a possibly undisclosed deal between Pruitt and Suzuki whereby Pruitt allegedly received a finder's fee for his fundraising efforts on behalf of BSI. The essence of this portion of Chow's letter was that if the arrangement had not yet been disclosed, it would "be best to disclose its nature in the public offering and account the amount in the use of proceeds." We seriously doubt that there is sufficient hint of impropriety in this portion of the letter to make the letter not reasonably susceptible to an innocent construction by anyone who might read it. We need not decide this question, however, since we have ruled that the defendants published the letter only to Suzuki; certainly this portion of the letter could not possibly defame Pruitt in the eyes of Suzuki, since Suzuki would know the truth or falsity of Chow's claims about the alleged deal between Pruitt and Suzuki.

■ The other allegedly defamatory portion of Chow's letter is a statement that a memorandum prepared in connection with BSI's private placement of securities contained a number of false and misleading statements relating to BSI's research activ-

---

**3.** The transmission of the letter from Chow to Placek and Pearson might be considered a publication. However, since this was a communication between a client and his attorneys relating to proposed litigation, it was privileged. *See Libco Corporation v. Adams,* 100 Ill.App.3d 314,

55 Ill.Dec. 805, 426 N.E.2d 1130 (1981); *Weiler v. Stern,* 67 Ill.App.3d 179, 23 Ill.Dec. 855, 384 N.E.2d 762 (1978). Moreover, the plaintiff's complaint in this case clearly is focused on the transmission of Chow's letter to Suzuki, the SEC and others, not to Placek and Pearson.

ity in soft tissue injury assessment and breast cancer screening. Although the letter did not state that Pruitt had prepared the memorandum, Pruitt claims that in fact he did prepare the memorandum and that Chow's allegations therefore defamed him. However, in making this claim Pruitt has ignored the fact that Chow's letter explicitly indicated that the attorneys who prepared the memorandum did not know that it contained the allegedly false or misleading information. After describing the alleged improprieties, Chow wrote: "I am aware that the Denver attorneys have asked for documentation from the researchers who are supposed to be doing our clinical studies on these ideas. I hope that you will properly disclose to them the true situation with respect to these studies." In view of this statement essentially exculpating "the Denver attorneys," of whom Pruitt was one, this portion of Chow's letter clearly is susceptible of a reasonable innocent construction with respect to Pruitt and therefore is not actionable.

■ The plaintiff argues, however, that the innocent construction rule may be used only to determine whether words are actionable as libel per se. He claims that he is still entitled to prove that Chow's letter was actionable as libel per quod. Under Illinois law, a statement may be actionable as libel per quod if it is actually defamatory and if specific damage is alleged. *See American Pet Motels v. Chicago Veterinary Medical Association*, 106 Ill.App.3d 626, 629, 62 Ill.Dec. 325, 328, 435 N.E.2d 1297, 1300 (1982).

Whether the innocent construction rule applies to libel per quod as well as per se (in other words, whether the rule is used to determine whether words are actionable at all) is a question to which the Illinois courts have not provided a definitive answer. *See generally id.* at 630–31, 62 Ill.Dec. at 328–29, 435 N.E.2d at 1300–01. Although the Illinois Supreme Court in the *Chapski* case did state that if a statement reasonably may be innocently construed it cannot be actionable per se, it is possible to interpret this language as meaning actionable *as a matter of law*. Thus, *Chapski* has not settled the issue. *See generally* Malone and Smolla, *The Future of Defamation in Illinois After Colson v. Stieg and Chapski v. Copley Press, Inc.*, 32 DePaul L.Rev. 219, 289–95 (1983). In fact, Illinois appellate courts applying the innocent construction rule since the *Chapski* decision have split on the question of whether it applies only to libel per se. *Compare Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago*, 120 Ill.App.3d 254, 257, 75 Ill.Dec. 947, 951, 458 N.E.2d 115, 119 (1983) *with Cartwright v. Garrison*, 113 Ill.App.3d 536, 540–41, 69 Ill.Dec. 229, 231–232, 447 N.E.2d 446, 448–49 (1983). Nor was an answer provided by the recent Illinois Supreme Court opinion in *Fried v. Jacobson*, 99 Ill.2d 24, 75 Ill.Dec. 398, 457 N.E.2d 392 (1983), which reaffirmed the innocent construction rule as stated in *Chapski*.

■ We need not decide, however, which application of the innocent construction rule is correct under Illinois law. Even assuming that the innocent construction rule does not preclude a plaintiff from proving that the defendant's statement is actionable as libel per quod, the plaintiff here has not presented a case for libel per quod sufficient to create a question for the jury. An action for libel per quod is established where a publication not libelous on its face is rendered defamatory by extrinsic facts or innuendo and special damages are proven. *Audition Division, Ltd. v. Better Business Bureau of Metropolitan Chicago*, 120 Ill.App.3d at 258, 75 Ill.Dec. at 951, 458 N.E.2d at 119. In this case, the plaintiff has not alleged any facts extrinsic to Chow's letter that would render the letter actually defamatory when it was not defamatory on its face. Accordingly, we hold as a matter of law that Chow's letter was non-defamatory as to Pruitt.

## III.

We turn now to the plaintiff's other claims, all of which may be rejected without extensive discussion.

In light of our ruling that the defendants were not responsible for publishing Chow's letter to anyone but Suzuki, the plaintiff's "false light" claim clearly must fail. This tort is concerned with "publicity that unreasonably places the other in a false light before the public." *Geisberger v. Willuhn*, 72 Ill.App.3d 435, 439, 28 Ill. Dec. 586, 589, 390 N.E.2d 945, 948 (1979). The defendants' letter to Suzuki obviously does not meet this definition.

The plaintiff's claim against the defendants for intentional infliction of emotional distress is equally devoid of merit. Under Illinois law, such a claim exists only where a defendant's conduct is "extreme and outrageous." *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 360 N.E.2d 765 (1976). Particularly in view of our holding that Chow's letter did not even defame Pruitt, we find there is not a triable issue of fact as to whether the defendants' conduct was "extreme and outrageous." Accordingly, summary judgment was appropriate on this issue.

Finally, the plaintiff's abuse of process claim also must fail. The plaintiff bases this claim on the defendants' statement that they would send Chow's letter to the SEC and initiate a civil suit against BSI if Suzuki refused to meet with them to discuss Chow's grievances. However, the plaintiff has not cited, nor can we find, any Illinois cases in which a person such as Pruitt has made a successful claim of abuse of process where there has been no legal action actually brought against him. *See generally* Restatement (Second) of Torts § 682 (1977). Indeed, the Illinois courts have stated explicitly that the tort of abuse of process requires "some *act* in the use of the legal process." *Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 966, 282 N.E.2d 452, 454 (1972) (emphasis add-

ed). Here, not only is Pruitt's abuse of process claim based entirely a mere threat of a lawsuit, but the threat was not even directed at him.[4] Accordingly, we find that Pruitt's complaint states no cause of action for abuse of process.

The judgment of the district court is affirmed.[5]

---

**4.** The record indicates that Chow actually has brought a suit against BSI, Suzuki, and several others, but not Pruitt.

**5.** The plaintiff also has argued that summary judgment in favor of Placek and Pearson was improper because they did not file an answer to the plaintiff's complaint. However, Rule 56(b) of the Federal Rules of Civil Procedure provides

that a defending party may move for summary judgment "at any time." We see no reason not to interpret this language as permitting a defendant, in an appropriate case, to move for summary judgment before filing an answer. *See Hubicki v. ACF Industries*, 484 F.2d 519, 522 (3d Cir.1973).